IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LILLIE YANCEY, on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) Case No.: |
| vs. | ) ) ) |
| TRUMBULL INSURANCE COMPANY, | ) ) |
| Defendant. | ) ) |

## NOTICE OF REMOVAL

Defendant Trumbull Insurance Company ("Trumbull"), by and through its attorneys Michael J. Duffy and Joseph Stafford of Wilson Elser Moskowitz Edelman & Dicker LLP, hereby removes Case No. 2020CH07364, pending in the Circuit Court of Cook County, Illinois, County Department, Chancery Division to the United States District Court for the Northern District of Illinois. Removal is based on the following grounds.

1.  This is a civil action that may be removed to this Honorable Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 and the Local Rules of the United States District Court for the Northern District of Illinois. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because: (1) this case is a putative class action; (2) there are at least one hundred putative class members; (3) the amount in controversy exceeds $5 million; and (4) at least one putative class member is from a different state than the defendant.

2.  On December 18, 2020, Plaintiff Lillie Yancey ("Plaintiff") filed a putative class action in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, captioned, *Lillie Yancey, on behalf of herself and all others similarly situated v. Trumbull*

*Insurance Company*, Case No. 2020CH07364 (the "State Court Action"). A true and correct copy of the Complaint is attached as **Exhibit A**.

3. Trumbull was served with a Summons and a copy of the Complaint on January 13, 2021. A copy of the Summons served on Trumbull is attached hereto as **Exhibit B**. Aside from the Summons and the Complaint, Trumbull has not been served with any other process, pleadings, or orders in the State Court Action.

4. This putative class action alleges that Trumbull breached the auto insurance policies between it and its insureds in Illinois by failing to include sales tax when making cash payments on automobile total loss claims. Compl. ¶¶ 1, 3, 18-20. Plaintiff is an insured who claims that she was not paid $219.08 in sales tax as part of a loss claim stemming from damage to her insured automobile. *Id.* ¶¶ 17-18. Plaintiff brings this lawsuit on behalf of herself and a purported class of all Illinois insureds who, within the applicable statute of limitations and through certification of the class, submitted a loss claim and "where the loss claim payment did not include sales tax." *Id.* ¶ 21.

5. Plaintiff asserts a single cause of action for breach of contract. *Id.* ¶¶ 29-35. Plaintiff seeks a judgment: (1) certifying the proposed class; (2) awarding compensatory and other damages; (3) awarding attorney's fees and expenses; and () injunctive relief. *Id.* pp. 6-7. Plaintiff does not allege any limit on the amount of damages she and the proposed class seek to recover. *Id.*

## I. **Trumbull Has Satisfied the Procedural Requirements for Removal.**

6. Trumbull has filed this Notice of Removal within thirty days of January 13, 2021, when it was served with the Complaint. Accordingly, this Notice is timely pursuant to 28 U.S.C. § 1446(b).

7. Venue is proper here because this Court is the "district and division embracing the place" where Plaintiff filed the State Court Action. 28 U.S.C. §§ 105(a), 1441(a).

8. Contemporaneously with the filing of this Notice of Removal, Trumbull has served Plaintiff's Counsel with written notice of the filing of this Notice of Removal and has filed a true and accurate copy of this Notice, together with all exhibits, with the Clerk of the Circuit Court of Cook County, Illinois, as required by 28 U.S.C. § 1446(d). That filing will automatically effect the removal of the subject action to this Court, in its entirety, for future proceedings.

9. As required by 28 U.S.C. §1446(a), copies of all process, pleadings, and orders on file in the State Court Action and served on Trumbull have been attached.

## II. Removal Is Proper Because the Court Has Subject Matter Jurisdiction Under 28 U.S.C. §§ 1332(d).

10. Congress enacted the 2005 Class Action Fairness Act ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (codified in relevant part at 28 U.S.C. §§ 1332(d) and 1453) to "facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014); S. Rep. No. 109-14, at *43 (noting that CAFA "is intended to expand substantially federal court jurisdiction over class actions").

11. CAFA grants district courts original jurisdiction over any class action in which: (1) there are at least one hundred putative class members; (2) the amount in controversy exceeds $5 million; and (3) any member of the putative class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d); *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017). This case satisfies all three requirements.

3045804v.1

### A.     Trumbull and at Least One Class Member Are Diverse.

12.     CAFA requires only minimal diversity; *i.e.,* that at least one member of the putative class is a citizen of a state different from that of any defendant. 28 U.S.C. § 1332(d)(2)(A).

13.     "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

14.     Trumbull is a Connecticut corporation with its principal place of business in Hartford, Connecticut, and thus, a citizen of Connecticut. Compl. ¶ 8.

15.     Plaintiff alleges that she is a citizen of Illinois who is domiciled in Illinois. *Id.* ¶ 1. In addition, the proposed class consists of all "Illinois insureds." Most, if not all, of these insureds will necessarily reside in Illinois and be citizens of Illinois. As such, Plaintiff and at least the majority of class members are citizens of Illinois.

16.     Minimum diversity exists because Trumbull is not a citizen of Illinois and Plaintiff and at least some of the class members are citizens of Illinois. *See* 28 U.S.C. §1332(d)(2)(A).

### B.     There Are at Least 100 Putative Class Members.

17.     CAFA applies where there are at least one hundred members of the putative class. 28 U.S.C. § 1332(d)(5)(B). Here, Plaintiff defines the class as "[a]ll Illinois insureds, under a policy issued by Trumbull [for automotive insurance] who, within the applicable statute of limitations period … submitted a first-party property damage claim determined by Trumbull to constitute a covered loss claim and where the loss claim payment did not include sales tax." Compl. ¶ 39. The statute of limitations in Illinois for breach of written contract is ten years. 735

4

Ill. Comp. Stat. 5/13-206. Therefore, the putative class includes any Illinois insured who had a loss claim and allegedly was not paid sales tax between December 18, 2010 and the present. Plaintiff also alleges that the class will include anyone who meets the class definition until the time of certification, and any decision on certification is at months away. Compl. ¶ 39. Plaintiff alleges that there "are thousands of Members of the Class." *Id*. ¶ 23. Trumbull's records similarly indicate that the proposed class is likely to include thousands of individuals. Declaration of L. Farber ¶ 4, attached as **Exhibit C**. Therefore, CAFA's numerosity requirement is satisfied.

    **C.**  **The Aggregate Amount in Controversy Exceeds $5,000,000.**

  18.  CAFA provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). The Senate Judiciary Committee's Report on CAFA explained that the amount in controversy requirement is "to be interpreted expansively" and that "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." S. Rep. 109-14, at *42. According to the Senate Judiciary Committee, Congress intended that the amount in controversy be measured "either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." *Id.*

  19.  The Seventh Circuit has explained that a removing party must only establish the amount in controversy "by a good faith estimate that is 'plausible and adequately supported by the evidence.'" *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017)

(quoting *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011)); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"). Moreover, "[t]he party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Roppo,* 869 F.3d at 579 (quoting *Blomberg,* 639 F.3d at 763). Stated differently, "[a] removing defendant need not confess liability in order to show that the controversy exceeds the threshold." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008). "[U]nless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court." *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011).

20. A defendant can establish the amount in controversy in multiple ways, including "by calculation from the complaint's allegations," "by reference to the plaintiff's informal estimates or settlement demands," or "by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands." *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017). The Seventh Circuit has made clear that this list "is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this demonstration may be made from either side's view-point (what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant)." *Id.*

21. While Trumbull disputes that it has breached its contracts with its insureds, that any certifiable class exists, or that Plaintiff and the putative class are entitled to any relief, the amount in controversy here clearly exceeds $5,000,000.

22. The Complaint identifies the actual harm purportedly suffered by Plaintiff and the putative class as being the non-payment of sales tax when Trumbull made a cash payment for loss claims. *See, e.g.*, Compl. ¶¶ 20, 35, Relief Requested. The Complaint, however, does not plead the amount of the alleged underpaid sales tax.

23. Plaintiff alleges that failing to include sales tax as part of the loss payment uniformly occurred for all members of the proposed class and that it was otherwise a standard practice of Trumbull not to pay sales tax. *See, e.g., id.* ¶¶ 20, 25.

24. Trumbull has analyzed the claims data it has for the period of December 18, 2010 through February 10, 2021. Based on this claim data, Trumbull estimates that the market value of all Illinois total loss claims during this period was approximately $67,831,875. Farber Decl. ¶¶ 5-7. Plaintiff does not allege a sales tax rate in her Complaint.[1] Illinois has a state sales tax 6.25% and most municipal or county jurisdictions have an additional tax rate, often of a percent or more. *See https://www.salestaxhandbook.com/illinois/rates* (explaining that Illinois has a state tax of 6.25% and allows local governments to impose additional sales tax). For example, according to mytax.illinois.gov, the total sales tax rate for a vehicle in Chicago is 8.5% if the purchaser is a resident of Chicago. https://mytax.illinois.gov/_/#4 (tax rate for Chicago). Based on its own internal data, Trumbull estimates that the average sales tax rate is approximately 7.11%. Farber Decl. ¶ 6.

25. Based on the estimated market value and tax rate set forth above, the total amount of tax at issue as of February 10, 2021 is at least $4,822,716. *See* Farber Decl. ¶ 8; *see also White v. Playphone, Inc.*, No. 08-cv-683-bbc, 2009 U.S. Dist. LEXIS 15647, at *12-13 (W.D.

---

[1] By taking the sales tax amount ($219.08) divided by the market value ($3,106.79) that Plaintiff alleges for her individual claim, it appears Plaintiff is alleging that the relevant sales tax rate for her personal claim was 7.05%, which is almost identical to the average rate proposed by Trumbull above. *Id.* ¶ 17.

Wis. Feb. 27, 2009) ("Because the complaint leaves open the possibility that all of defendants' charges to Wisconsin customers may be unauthorized, all of defendants' Wisconsin revenues are in question."); *Spivey v. Vertrue, Inc.*, 528 F. 3d 982, 986 (7th Cir. 2008) (holding that because plaintiff alleges a uniform practice of overcharging plaintiffs, all potential transactions are included in the calculation of the amount in controversy). Moreover, the alleged class period continues until the class certification date (Compl. ¶ 21), which realistically will not occur for close to a year from now, at the earliest. Over the last ten years, the average amount of sales tax at issue per year is approximately $482,000. Farber Decl. ¶ 8. It is reasonable to expect that a similar amount of sales tax will be at issue for the period between now and the potential date of certification. That would place another $482,000 at issue during the alleged class period. According, there is at least $5,304,716 of tax at issue.

26. Plaintiff also seeks injunctive relief, which would presumably be a requirement that Trumbull include the payment of sales tax on any future loss claims made under the policy language at issue here. A district court applying the jurisdictional threshold must attempt to measure the amount in controversy "by the value of the object of the litigation." *Johnson v. Hunt*, No. 14-cv-8986, 2015 WL 3396798, at *4 (N.D. Ill. May 26, 2015) (quoting *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347–48 (1977)). "The value of the injunctive or declaratory relief must necessarily be estimated, and may be assessed from either party's viewpoint." *Abraham v. State Farm Mut. Auto. Ins. Co.*, No. 19-CV-3028, 2020 WL 1433782, at *3 (N.D. Ill. Mar. 24, 2020); *see Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006) (noting that in equitable relief cases, the amount in controversy may be "what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant"). Thus, courts assessing the amount in controversy in lawsuits seeking

prospective equitable relief must consider, among other things, the cost to "comply with an injunction," "if the class is right." *Keeling v. Estrange Ins. Co.*, 660 F.3d 273, 274 (7th Cir. 2011) (considering impact of what policy change would have to insurance company and including it in amount in controversy).

27. If the Court were to interpret the policy language as Plaintiff proposes, then Trumbull would have to pay sales tax as part of every loss claim if Plaintiff's request for injunctive relief were granted. It would take Trumbull at least a year to two years to change its policy language following any final ruling in Plaintiffs' favor given that existing customers already have their policies in place until renewal. As such, at least another $482,000 to $964,000 is at issue, bringing the amount at issue to between $5,800,000 and $6,300,000.

28. Plaintiff also alleges an entitlement to attorney's fees. *See Caprarola v. Helzberg's Diamond Shops, Inc.*, No. 13 C 6493, 2014 WL 12936983, at *2 (N.D. Ill. May 1, 2014) (considering attorney's fees when calculating jurisdictional amount in controversy under CAFA). While Plaintiff has not quantified the amount of attorney's fees seeking, the fact that some attorney's fees are being sought further supports that the removal threshold has been met.

29. In the aggregate, the actual damages and injunctive relief that Plaintiff and the putative class seek in this case readily satisfies CAFA's $5 million amount-in-controversy requirement.

### D. None of CAFA's Exceptions Applies.

30. CAFA provides two exceptions to the application of federal jurisdiction, neither of which applies here. *See* 28 U.S.C. § 1332(d)(3)-(4). Plaintiff bears the burden of proving that one of CAFA's exceptions to jurisdiction applies. *See Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675 (7th Cir. 2006). As a threshold matter, each CAFA exception requires an in-state

defendant. *See* 28 U.S.C. § 1332(d)(3) (providing a discretionary exception where the "primary defendants are citizens of the State in which the action was originally filed"); § 1332(d)(4) (requiring the Court to decline jurisdiction where either (i) "significant relief" is sought from a defendant "who is a citizen of the State in which the action was originally filed" or (ii) the "primary defendants" are in-state defendants). Here, the only named defendant is Trumbull, which is a citizen of Connecticut—not Illinois. *Id.* § 1332(c)(1).

WHEREFORE, without waiving any of its potential defenses or counterclaims, Trumbull respectfully provides notice that this cause has been removed from the Circuit Court of Cook County, Illinois, Case No.2020CH07634, to the United States District Court for the Northern District of Illinois, pursuant to the provisions of 28 U.S.C. § 1446 and the Local Rules of the United States District Court for the Northern District of Illinois.

Dated: February 12, 2021

Respectfully submitted,

DEFENDANT TRUMBULL INSURANCE COMPANY

By: /s/ Michael J. Duffy_____
      One of Its Attorneys

Michael J. Duffy (michael.duffy@wilsonelser.com)
Joseph J. Stafford (joseph.stafford@wilsonelser.com)
Wilson Elser Moskowitz Edelman & Dicker LLP
55 West Monroe Street - Suite 3800
Chicago, IL 60603
(312) 704-0550
(312) 704-1522 (fax)
Firm I.D. # 16741

3045804v.1

Kim Rinehart (pro hac vice forthcoming)
John Doroghazi (pro hac vice forthcoming)
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Phone: (203) 498-4400
Fax: (203) 782-2889
krinehart@wiggin.com
jdoroghazi@wiggin.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 12, 2021, I electronically filed the aforesaid document(s) with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record in this case by operation of the Court's electronic filing system and/or U.S. Mail. Parties may access this filing through the Court's system.

Gary M. Klinger
Mason Lietz & Klinger LLP
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(202) 49-2290
gklinger@masonllp.com

Rachel Dapeer
Dapeer Law, P.A.
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
(305) 610-5223
rachel@dapeer.com

Edmund A. Normand
Jacob L. Phillips
Normand PLLC
3165 McCrory Place, Suite 175
Orlando, FL 32803
(407) 603-6031
ed@normandpllc.com
Jacob.phillips@normandpllc.com
service@normandpllc.com

Scott Edelsberg, Esq.
Edelsberg Law, P.A.
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
scott@edelsberglaw.com

Andrew J. Shamis
Shamis & Gentile
14 NE 1st Avenue, Suite 705
Miami, FL 33132
(305) 479-2299
ashamis@shamisgentile.com

                                          /s/ Debra Thorne

3045804v.1